UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at LEXINGTON

CIVIL ACTION NO. 5:09-CV-183-KKC

APRIL L. LOTT                                                                                           PLAINTIFF

v.             **MEMORANDUM OPINION AND ORDER**

TRADESMEN INTERNATIONAL, INC.                                               DEFENDANT

\* \* \*    \* \* \*    \* \* \*    \* \* \*

This matter is before the Court on Defendant's motion for summary judgment and Plaintiff's motion for summary judgment. [DE 72, DE 73]. Plaintiff seeks a judgment that Defendant retaliated against her in violation of the Kentucky Civil Rights Act and Title VII of the Civil Rights Act. Defendant seeks a judgment that it did not retaliate against Plaintiff and dismissal of Plaintiff's Complaint. For the following reasons, both motions are **DENIED**.

**BACKGROUND**

Plaintiff, April Lott, was employed by Defendant, Tradesmen International, Inc., in 2008. Tradesmen is a staffing agency which leases employees to construction contractors. Plaintiff was subcontracted to work for Titan Contracting & Leasing at a project in Trimble County, Kentucky as a Field Operations Clerk. According to Lott, she was subjected to unwelcome touching at the Titan jobsite by John Sanborn at least seven times. [DE 72-2 at 17, Lott Dep. at 96]. Plaintiff also received four pornographic emails from Sanborn. Lott told Mark Bernard, her supervisor at Tradesmen, about Sanborn's touching and emails. [DE 72-2 at 20-21, Lott Dep. at 100-01; DE 73-6 at 25-26, Bernard Dep. at 100-04].

1

Plaintiff was fired by Titan for not taking a drug test that was administered under questionable circumstances. Plaintiff was asked to give a urine sample in the bathroom of Titan's office, a trailer on the construction site. Lott was required to give the sample with the bathroom door open. Sanborn and other men were in the trailer and watched Lott attempt to give a urine sample. Lott was unable to give a sample, and Titan terminated her for not submitting to the drug test. [DE 73-1 at 4-5; 73-2 at 10, Lott Dep. at 37-38].

Lott told Tradesmen about the circumstances of her termination from Titan and Tradesmen says it unsuccessfully attempted to get Lott her job back at Titan. Tradesmen then employed Lott in house at a Tradesmen office in Lexington, Kentucky. Plaintiff alleges that he told Bernard that she was going to sue Titan for sexual harassment and asked Bernard to give her attorney's card to his supervisor, Ryan Gobert. Lott alleges that she was terminated by Gobert after Bernard told Gobert about her threat and gave him the attorney's card. Plaintiff alleges that Tradesmen retaliated against her in violation of the Kentucky Civil Rights Act and Title VII because she threatened to sue Titan, a major Tradesmen client, for discrimination. Tradesmen argues that Lott never complained about sexual harassment or discriminatory treatment and she was terminated because Tradesmen did not have any work for her to do.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to show that a particular fact is disputed, a party must cite to "particular parts of materials in the record." Fed. R. Civ. P. 56(c). A party opposing a motion for summary judgment cannot "simply show that there is some metaphysical doubt as to the material

facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A scintilla of evidence in support of the plaintiff's position is not enough because there must be enough evidence to allow a jury to reasonably find for the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

When considering a motion for summary judgment, the court must view the facts contained in the record and draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita*, 475 U.S. at 587. What the court must ultimately determine is whether there is a sufficient dispute about the evidence to require submission to the jury, or whether the evidence favors one side so strongly that it is entitled to judgment as a matter of law. *Anderson*, 477 U.S. at 251-52.

## ANALYSIS

Although the factual disputes in this case are varied and complex, those disputes are issues for the jury and cannot be resolved on summary judgment. Viewing the facts in the record and drawing all reasonable inferences in the light most favorable to Plaintiff, she has presented direct evidence of retaliation and established a *prima facie* case of retaliation sufficient to survive summary judgment. On the other hand, viewing the evidence in the record and drawing all reasonable inferences in the light most favorable to Tradesmen, there is a sufficient dispute of material fact that requires submission to the jury.

Section 704(a) of Title VII prohibits retaliation against an employee "because [s]he has opposed any [unlawful employment] practice . . . or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this [title]." 42 U.S.C. § 2000e-3(a). Retaliation under Kentucky law is analyzed in the same way it is

3

under federal law. *Curtis v. Hanger Prosthetics & Orthodics, Inc.*, 101 F. App'x. 61, 64 (6th Cir.2004) (citing *Mountain Clay, Inc. v. Commonwealth*, 830 S.W.2d 395, 396 (Ky.App.1992)).

Title VII protects two types of activity from retaliation—participation in an investigation or hearing alleging discrimination and opposition to unlawful employment practices. An employee is protected from retaliation from her employer if she participates in a charge against or opposes an employment practice of a different employer. *See Flowers v. Columbia College Chicago*, 397 F.3d 532, 533-34 (7th Cir. 2005); *McMenemy v. City of Rochester*, 241 F.3d 279, 284 (2d Cir. 2001) ("Title VII protects an employee from *any* employer, present or future, who retaliates against him because of his prior or ongoing opposition to an unlawful employment practice or participation in Title VII proceedings.")  Therefore, it is of no legal significance that Lott allegedly opposed or participated in an action against Titan and was allegedly retaliated against by Tradesmen.

The participation clause provides "exceptionally broad protection" that extends to anyone who participated in any manner in Title VII proceedings. The employee is protected even if she is wrong about the merits of her charge. *See e.g.*, *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312 (6th Cir. 1989) ("Protection is not lost if the employee is wrong on the merits of the charge.").

The opposition clause "covers conduct such as complaining to anyone . . . about allegedly unlawful practices; refusing to obey an order because the worker thinks it is an unlawful order under Title VII; and opposing unlawful acts by persons other than the employer." *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 721 (6th Cir. 2008). The opposition clause protects an employee as long as she had a reasonable and good faith belief that the employment practice being opposed violated Title VII. *See Booker*, 879 F.2d at 1312 ("A person opposing an

4

apparently discriminatory practice does not bear the entire risk that it is in fact lawful; he or she must only have a good faith believe that the practice [being opposed] is unlawful.").

To survive summary judgment, Lott must present either direct evidence of retaliation or a *prima facie* case of retaliation through circumstantial evidence. *McDonnell Douglas v. Green,* 411 U.S. 792, 802-04 (1973); *Abbot v. Crown Motor Co.,* 348 F.3d 537, 542 (6th Cir. 2003).

I.      Direct Evidence

"A plaintiff in a Title VII . . . action may establish retaliation either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation." *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 543 (6th Cir. 2008). "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). If the employee produces direct evidence of discrimination, "the burden of both production and persuasion shifts to the employer to prove that it would have terminated the employee even if it has not been motivated by the impermissible discrimination." *Nguyen v. Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

Lott has produced direct evidence of retaliation. Plaintiff alleges that she was sexually harassed at Titan and told her supervisor, Mark Bernard, about the harassment. Bernard acknowledges that Lott "felt that she was harassed at Titan" [DE 74-3 at 22, Bernard Dep at 88] and "the problem was the way the [drug] test was being given and she wasn't comfortable with the way the test was being given." [DE 74-3 at 5, Bernard Dep. at 19]. Bernard remembers having a conversation with Lott in which she identified her harasser as one of the individuals standing outside the open door of the bathroom when she was attempting to give a urine sample

5

for the drug test. [DE 74-3 at 18, Bernard Dep. at 71-72.] Bernard informed Ryan Gobert of Lott's termination from Titan after the drug testing incident and he is very sure he spoke with Gobert about Lott's sexual harassment allegations. [DE 74-3 at at, Bernard Dep. at 53-54]. After being told about the drug testing incident at Titan, Gobert's reaction, according to Bernard, was to "help her find another job," and said "[l]et's put her over in Lexington. We'll help her find another job." [DE 74-3 at 14, Bernard Dep. at 54].

Lott told Bernard that she would be consulting with an attorney regarding her experience at Titan and Bernard "told her it was a bad idea" and warned her "[d]o not, do not do that." [DE 74-3 at 22, Bernard Dep. at 87-88]. Bernard told Lott's husband that she should "leave it alone. It's not a good idea." [DE 74-3 at 23, Bernard Dep. at 89]. After working in Lexington for a brief period of time, "Lott showed up in [Bernard's] office with a card from an attorney which [Bernard] immediately walked across the hall and gave it to Ryan Gobert [who] informed [Bernard] that . . . we're done helping her." [DE 74-3 at 23, Bernard Dep. at 89]. Bernard understood that to mean "[s]he don't work for us no more. She was a problem. She had to go away." [DE 74-3 at 23, Bernard Dep. at 89]. Bernard "distinctly remembers" handing Gobert the attorney's card and that Gobert's exact words were "we are done helping her." [DE 74-3 at 23, Bernard Dep. at 90]. In his deposition Gobert was clear that he told Lott it would be bad if she threatened to sue or sued Titan because Tradesmen "ha[s] very big attorneys and [is] very powerful and [is] not going to let anything happen to Titan." [DE 74-3 at 24, Bernard Dep. at 93].

In addition to Gobert's deposition testimony, Lott secretly recorded conversations with Gobert in which he unmistakably states that Tradesmen fired Lott because she threatened to sue Titan. In one conversation, Lott says "because I am suing Titan they're letting me go" to which

6

Bernard responds, "pretty much" and "I told you that, that's what's going to happen." [DE 74-12 at 2]. In another conversation, Bernard told Lott "you're suing one of our people, you know, they're not going to do you any favors." [DE 74-13 at 8]. Bernard states that the job in Lexington was a "favor" and when Lott asks "as soon as I handed him that card to sue Titan" Bernard replies, "[n]o more favors, right. Favors were gone." [DE 74-13 at 10].

      Tradesmen argues that Lott's direct evidence is insufficient to survive summary judgment for three reasons. First, Tradesmen argues that Lott's threat to hire an attorney is not a protected activity as a matter of law. Second, Tradesmen argues that Lott cannot maintain a retaliation action as a matter of law because she only complained about Titan violating her right to privacy. Finally, Tradesmen argues that Lott's direct evidence is insufficient as a matter of law because it does not prove that Ryan Gobert, the decision maker with respect to Lott's employment status, was motivated by retaliatory animus. Viewing the evidence in the light most favorable to Plaintiff, each of Tradesmen's arguments fail.

      First, Tradesmen argues that Lott's "threat to hire an attorney" is not participation or opposition under Title VII because in *Fox v. Eagle Distributing Co.*, "the Sixth Circuit determined that an employee's threats to sue her employer, alone, did not constitute protected activity." [DE 75 at 9]. In *Fox*, the Sixth Circuit concluded that the plaintiff's vague and fanciful threats to sue his employer did not rise to the level of opposition to age discrimination because the record was devoid of the plaintiff complaining about age discrimination. *See Fox v. Eagle Distributing Co.*, 510 F.3d 587, 592 (6th Cir. 2007) ("Fox's vague charge that Eagle management was 'out to get him' is insufficient to constitute opposition to an unlawful employment practice and does not merit ADEA protection."). Viewing the evidence in the light most favorable to Lott, the facts here are markedly different than *Fox*, because Lott cites direct

7

evidence that she complained to her supervisor about sexual harassment at Titan, hired a lawyer and threatened to pursue sexual harassment claims against Titan. At the very least, Lott opposed the alleged sexual harassment at Titan and likely began participating in an action against Titan.

Next, Tradesmen argues that Lott did not complain about sexual harassment at Titan but instead complained about Titan violating her right to privacy. Although Lott may have at one point characterized her complaints against Titan as a violation of her right to privacy, Bernard acknowledged that Lott felt harassed at Titan and her problem with the drug test was that the alleged harasser was one of the individuals who could see into the bathroom when she was forced to give a urine sample. Viewing the evidence in the light most favorable to Plaintiff, Lott cites evidence that she engaged in protected activity by opposing sexual harassment at Titan and then threatening and taking steps to initiate legal action over that harassment.

Finally, Tradesmen argues that Lott's direct evidence is insufficient because it is not "an admission by the decision-maker that his actions were based upon prohibited animus." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). Tradesmen points out that Gobert was the sole decision maker with respect to Lott's termination and Lott's direct evidence is mostly statements from Bernard. The issue here is whether Bernard's comments can be considered a remark "by the employer." *See Wharton v. Gorman-Rupp Co.*, 309 F. App'x 990, 995 (6th Cir. 2009). "A discriminatory comment is attributable to the employer when it is made by a decision maker." *Id.* (citing *Coburn v. Rockwell Automation, Inc.*, 238 F. App'x 112, 118 (6th Cir. 2007) (discussing the "vital difference" between discriminatory statements by corporate decision makers and "stray remarks" by personnel unrelated to the decision making process)). A statement by a decision maker is sufficient but not necessary to be attributable to the employer. As the Sixth Circuit discussed in *Wharton*, statements by non-decision makers can be attributable

8

to the employer if the witness has "personal knowledge" and "directly implicate[s] . . . the undisputed decision maker" by "using the first person plural 'we.'" *Wharton*, 309 F. App'x at 996 (internal quotation marks omitted).

Just like the statements in *Wharton*, Bernard's statements and testimony can be attributed to Tradesmen because he was a witness with personal knowledge of Gobert's reasons for terminating Lott. *See Wharton*, 309 F. App'x at 996. Moreover, Bernard's deposition testimony about what Ryan Gobert said is in the first person plural "we." [DE 73-6 at 23, Bernard Dep. at 89 ("he informed me that, well '*we're*' done helping her.") (emphasis added)]. At the summary judgment stage of analysis, it is appropriate to hold Bernard's remarks attributable to Tradesmen as direct evidence of retaliation.

Lott's motion for summary judgment must be denied because when considering her motion, the Court must view the evidence in the light most favorable to Tradesmen. Tradesmen raises a factual dispute about whether Lott's complaints to Bernard were about Titan violating her right of privacy, not sexual harassment. [DE 75-1 at 3-4, Lott Dep. at 42-43]. Tradesmen also raises a factual dispute about whether Bernard's statements are properly attributable to Tradesmen because Gobert, the decision maker, denies having knowledge about Lott's complaints and denies acting with an impermissible retaliatory animus. [DE 75-12 at 3-4, Gobert Dep. at 35-37; DE 74-3 at 27, Bernard Dep. at 108]. On a motion for summary judgment, the Court is unable to resolve these factual disputes and enter judgment for Lott. Ultimately a jury must determine whether Lott engaged in protected activity and whether Bernard's statements are attributable to Tradesmen and Gobert.

II.     Circumstantial Evidence

Furthermore, even if Gobert's testimony is not considered direct evidence, but circumstantial evidence of retaliation, Tradesmen would not be entitled to summary judgment under the *McDonnell Douglas* framework. Plaintiff has established a *prima facie* case of discrimination and cites evidence that Defendant's legitimate non-discriminatory reason was a pretext and the real reason for the termination was impermissible retaliation.

When a plaintiff presents only circumstantial evidence, Title VII retaliation claims are examined under the *McDonnell Douglas* evidentiary framework. *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 544 (6th Cir. 2008). The plaintiff has the initial burden under *McDonnell Douglas* to establish a *prima facie* case of retaliation by showing:

> (1) that plaintiff engaged in an activity protected by Title VII; (2) that the exercise of his [or her] civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action.

*Christopher v. Stouder Memorial Hosp.*, 936 F.2d 870, 877 (6th Cir. 1991) (citation omitted)

If the plaintiff makes the *prima facie* case, "the burden then shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for its actions." *Imwalle*, 515 F.3d at 544. If the defendant articulates such a reason, "the plaintiff must prove not only that the defendant's proffered reason was a pretext, but that the real reason for the employer's action was intentional retaliation." *Id.*

Tradesmen argues that Lott cannot establish a *prima facie* case because she did not engage in protected activity and that there was no causal link between the protected activity and her termination from Tradesmen. As discussed above, viewing the evidence in the light most favorable to Plaintiff, Lott's complaints to Bernard about harassment and the drug testing at

10

Titan was opposition to an unlawful employment practice. Furthermore, Lott's threat to sue Titan and giving Bernard her attorney's business card with instructions to deliver the card to Gobert is opposition to discrimination and likely participation in a charge of discrimination.

Tradesmen denies there is a causal link between any protected activity and Gobert's decision to terminate Lott. However, Lott has produced evidence that her protected activity was the sole reason for her termination. Bernard said in no uncertain terms that once he gave Gobert the attorney's card and Gobert knew of Lott's intention to sue Titan—Gobert decided to terminate Lott. Bernard was also recorded saying that Lott's decision to sue Titan for discrimination was the reason for her termination. Plaintiff has cited sufficient evidence of a causal link between her protected activity and her termination to survive summary judgment.

Because Lott can establish a *prima facie* case of retaliation, Tradesmen must articulate some legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802-03. Tradesmen articulates such a reason. Tradesmen cites evidence to support its argument that Lott's employment was always temporary and she was terminated because Tradesmen no longer had any work for her. [DE 72-14; DE 72-1 at 7-8, Lott Dep. at 50-51].

Because Defendant articulates a legitimate, nondiscriminatory reason for its actions, the burden shifts back to Plaintiff to show the reason offered by the defendant was not its true reason but merely pretext for discrimination. As discussed above, Lott cites sufficient evidence that Tradesmen's reason for terminating her was because she engaged in protected activity to submit this case to a jury.

## **CONCLUSION**

Plaintiff and Defendant each moved for summary judgment arguing that their version of the facts requires judgment as a matter of law. Viewing the facts in the light most favorable to the non-moving party, both motions must be denied. The jury, not the Court, must ultimately resolve this case because there is a sufficient dispute about the evidence to require submission to the jury.

Accordingly, it is **ORDERED** that:

1) Defendant's Motion for Summary Judgment [DE 72] is **DENIED**; and

2) Plaintiff's Motion for Summary Judgment [DE 73] is **DENIED**.

So ORDERED.

Dated this 22nd day of June, 2012.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge